THOMAS BOYD, Complainant, Appellee,

*vs.*

SPENCER STONE, Defendant, Appellant, impleaded with others.

APPEAL IN EQUITY FROM WALWORTH CIRCUIT COURT.

It is the duty of a solicitor of record to notify the opposite solicitor of his disconnection with the case; and until such notice, the solicitor of record will be held responsible in the cause, and service upon him is good.

As to the rights of non-residents in chancery proceedings, and regularity of practice, see case.

After default had been entered, and a final decree of foreclosure and sale pronounced, and the sale consummated and confirmed, the final decree was opened and vacated, together with all proceedings after the original default, on the petition of a non-resident defendant, and the petitioner had leave to answer and did answer; and after which, the complainant asked, and obtained, leave to amend his bill, and did amend; to which amended bill, the non-resident defendant failed to answer as required; and thereupon, on the complainant's motion, the order, vacating the original default and subsequent proceedings, was annulled, and the original decree of sale and confirmation was revived and confirmed. Held, that such practice was irregular. The proper course would have been to have entered the default of the defendant, for failure to answer the amended bill, and thereupon to proceed to final decree.

THE bill in this case was filed March 11, 1852, in the Walworth Circuit Court, to foreclose a mortgage executed to the complainant by Philo Clarke, one of the defendants, on certain lands in Walworth county. The appellant Stone was made defendant in the bill, but was not served with process, being a non-resident of the state. On the 19th of April, 1852, an order was made requiring the appellant, and other non-resident defendants, to appear, plead, answer or demur within ninety days from the date of the order, not specifying any day certain. On the 29th of July, 1852, the complainant's solicitors entered an order, signed by themselves only, taking the bill as confessed against the appellant among others. On the 11th of December, 1852, a final decree of foreclosure and sale of the mortgaged premises

was entered. The premises were sold to the complainant, and the sale was confirmed, May 28, 1853.

In October, 1854, the appellant filed a petition, setting forth, among other things, the facts above stated; also, that he was a non-resident, and had no notice of these proceedings; and that he had a good defence to the bill. On the 5th of October, 1854, the petition came on for hearing, and was argued by counsel; whereupon it was ordered, that the decree *pro confesso*, and all subsequent proceedings in the suit, be set aside and vacated, and that the appellant plead, &c., by a specified day. He answered accordingly.

On the 5th day of May, 1855, the bill was dismissed as to the appellant, for want of a replication. January 3, 1856, the order last named was vacated, and the complainant had leave to amend his bill of complaint within twenty days, and the appellant was to have thirty days after service of a copy of the amended bill, in which to plead, answer or demur thereto.

The amended bill was filed January 25, 1856.

February 29, 1856, a notice was filed to the effect that the authority and connection of the appellant's solicitor had ceased on the 15th January, 1856.

April 3, 1856, the affidavit of H. S. Winsor, Esq., was filed, stating that he was one of the solicitors of the complainant, and that on the day of filing the amended bill he mailed a copy thereof to Winfield Smith, Esq., of the city of Milwaukee, "who is the solicitor of record of the said Spencer A. Stone," and paid the postage; and on the same day, viz: April 3, 1856, an order *pro confesso* was entered as to the appellant Stone.

On the 20th May, 1856, H. S. Winsor, Esq., the complainant's solicitor, filed his affidavit, recapitulating some of the prior proceedings in the cause; that the amended bill was duly served upon the solicitor of record in the cause; that the order *pro confesso* was entered, and that the case then stood in court upon the the bill of complaint unanswered, and taken as confessed by the defendant. Whereupon, on the same day, a final order and decree were made, "that the default and orders *pro confesso* against the said defendant, heretofore entered in this cause, be confirmed,

and that the order of the 5th of October, 1854, setting aside and vacating the former order and decree, and all subsequent proceedings, be and the same are hereby vacated and made void, and that the final decree, sale, report and order of confirmation of sale, heretofore made in this cause on the part of the said complainant, be confirmed and held for good." ·

From which order and decree the defendant Stone appealed to this court.

*Smith & Salomon*, for the appellant.

The amended bill was never served on the appellant, and hence the order of April 3d was irregular, and did not warrant the court in making a final decree cutting off the appellant's rights. By the order of 29th May, the suit had been dismissed as to the appellant, and his solicitor's authority in it had ceased in consequence. If there was any doubt of this, the notice of the 29th February removed it. The record of the case shows that at the date of the order of April 3d the appellant had not had notice of the amended bill, or an opportunity to answer it.

Had the order of the 3d of April been regular, the appellant should have had notice of the unusual order of the 20th of May, notwithstanding the bill had been taken as confessed against him. 1 *Barb. Ch. Pr.* 372, 569; 4 *of Equity Rules; King vs. Bryant*, 3 *Myl. & Craig*, 191; 1 *Paige*, 39; 4 *id.* 551.

The order appealed from is irregular. 1. The case stood upon the bill as amended, and the order *pro confesso* as to Stone, none of the other defendants having been proceeded against since the order *pro confesso* was first vacated. 2. The order of October 5, 1854, was entirely proper. It was justified by the statute in favor of non-resident defendants, even if the previous proceedings had all been regular. *R. S.*, chap. 84, §§ 18, 36. The previous proceedings had been irregular; the rights of non-resident defendants had been disregarded; the complainant had got the appellant's land without the forms of law; the order of October 5, 1854, rectified this injustice, and is totally unassailable. The order appealed from, so far as the appellant is concerned,

vacates every proper order, and revives every improper order before annulled.

*H. S. Winsor*, for the appellee.

*By the Court*, COLE J.   Conceding that the complainant Boyd, was entitled to take an order *pro confesso* as to the defendant Stone, for want of an answer to his amended bill, which amended bill his counsel insist was duly filed, and properly served upon Stone's solicitor, yet we do not see how such an unusual order as the one taken in this cause, and appealed from, can be sustained.

Without alluding to other steps taken in the cause, other than those to which it is necessary to refer to make our remarks understood, it will be observed, that upon the application of Stone, one of the defendants, the Circuit Court by the order of October 5th, 1854, vacated and set aside a previous order *pro confesso*, entered in the suit, and all subsequent orders and proceedings in the cause.  As a matter of course, by this order of foreclosure and sale of the mortgaged premises, the sale made under that decree, as well as the order confirming such sale, were wholly vacated and set aside.  Such was the object and scope of the order of October 5th, 1854; if its legitimate effect upon the proceedings is given to it.  Upon this order being granted, Stone filed his answer to the bill.  After the answer was filed, the complainant obtained leave to amend his bill within twenty days, as he might be advised; and by the order permitting this amendment, the defendant Stone had thirty days after service of a copy of the amended bill, in which to plead or answer thereto.

Material amendments, or what were undoubtedly considered by the complainant as material amendments, were filed to the original bill, and the defendant Stone was required to answer these amendments under oath.  A copy of the amended bill was served upon the solicitor of Stone.  True, a question was made, whether this service was good, but we will only say upon

that point, that we consider the service entirely sufficient; the mailed copy having been sent off to Mr. Smith, at Milwaukee, before the complainant's solicitors had been notified by him that his connection with the case had ceased. He was the solicitor of record, and the only one the complainant could serve his amended bill upon. Stone then neglecting to file his answer within thirty days, the complainant was, unquestionably, entitled to an order that the bill as amended be taken as confessed, as to Stone, and a decree of foreclosure and sale of the mortgaged premises. It appears very clear to us that such was the proper and regular decree to be taken at this stage of the proceedings. But the complainant did not see fit to take such a decree, and have the mortgaged premises sold, but an order was entered vacating the order of the 5th of October, and confirming everything set aside and vacated by this last-mentioned order. By this novel practice, the complainant abandoned the case as it stood upon his amended bill, and attempted to fall back upon a decree and sale made upon the original bill, which had been vacated and set aside. No authority has been cited in support of the practice pursued in this case, and we certainly know of none. We consider it irregular and improper. Let the complainant take his decree upon his amended bill, and proceed to a sale of the mortgaged premises. But it is suggested, if he does this, that the parties will be brought back to the same position they occupied before the order of October 5th, 1854, was entered; and that, therefore, a re-sale is entirely unnecessary. Such may or may not be the case. The property may bring more, or it may not bring as much as it did at the former sale. We think it altogether probable that it will bring more. Such, undoubtedly, was the idea of Stone; otherwise he would not have taken steps to have the first sale set aside. But however this may be, Stone is entitled to have a re-sale of the premises, and an opportunity of protecting his interests in the premises, at such re-sale, if he desires to, and has any such interests to protect.

The order of the court below is reversed, and the cause remanded for further proceedings according to law.